UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN F. ZASTROW,

        Plaintiff,

        v.                                      Case No. 11-C-371

WILLIAM POLLARD, DENNIS MOSHER,
CATHY FRANCOIS, MICHAEL BAENEN,
WELCOME ROSE, and CHARLES COLE,

        Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. 25), GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTION FOR TRIAL (DOC. 24),
AND SETTING A TELEPHONIC SCHEDULING CONFERENCE

Plaintiff filed this *pro se* action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis* on a claim that prison officials violated his due process rights by denying his marriage request. Defendants have filed a motion for summary judgment, which will be granted in part and denied in part for the reasons stated herein.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248.

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND[1]

At all times relevant to this matter, plaintiff Steven F. Zastrow (Zastrow) has been a Wisconsin state prisoner confined to the Green Bay Correctional Institution (GBCI).

Defendant Dennis Mosher (Mosher) is employed by the Department of Corrections (DOC) as Institution Social Services Director at the GBCI. Mosher has been in this position since 2004, and is responsible for supervising chaplains, social workers, recreation leaders and records. Moreover, his responsibility includes marriage coordinator. In this capacity, Mosher reviews inmate files and makes recommendations to the Warden on the appropriateness or legality of proposed marriages.

---

[1] Facts are taken from the undisputed portions of the Defendants' Proposed Findings of Fact (Doc. 27), and from the verified complaint (Doc. 1).

Defendant William Pollard (Pollard) is employed by the DOC as Warden of the Waupun Correctional Institution in Waupun, Wisconsin. He was Warden at GBCI from March 2005 to March 2011. In Pollard's capacity as Warden, he has the duties generally defined by Wis. Stat. § 302.04 and as otherwise set forth in the Wisconsin Statutes and Wisconsin Administrative Code. Pollard is responsible for the overall administration and operation of the institution. These duties include the implementation of all DOC policies and directives, as well as the implementation of legislative and judicial mandates. Pollard is familiar with policies applicable to the GBCI and the general operation of the institution.

Defendant Michael Baenen (Baenen) is currently employed by the DOC as the Warden at GBCI. Baenen has held this position since March 27, 2011. Prior to becoming Warden, he was employed as the Deputy Warden at the GBCI from August 1, 1999 to March 26, 2011. In Baenen's capacity as Deputy Warden, under the general direction of the Warden, he had the duties and responsibilities to help develop, implement, and administer the security, treatment, and support services for the GBCI. Baenen was also responsible for providing the appropriate information to agencies, the legislature, and the public on institution development and operations.

Defendants Catherine Francois (Francois), Welcome Rose (Rose), and Charles Cole (Cole) are employed by the DOC. Francois is the Inmate Complaint Examiner (ICE) at the GBCI, (Rose) is a Corrections Complaint Examiner (CCE), and (Cole) is the Deputy Secretary of the DOC. Cole is the DOC Secretary's designee for the purpose of making final agency decisions on offender complaints filed by Wisconsin inmates in the Inmate Complaint Review System (ICRS).

3

Division of Adult Institutions (DAI) Policy and Procedures 309.00.06 states:

Inmates may request to marry while incarcerated if the following conditions are met:

a. The marriage does not pose a threat to the security of the institution/center or a threat to the safety of the public;
b. There are no legal impediments to the marriage;
c. The inmate is not scheduled for release within nine (9) months;
d. The proposed spouse or the proposed spouse's children are not victims of the inmate;
e. The proposed spouse has never been convicted in any criminal activity with the inmate; and
f. The proposed spouse has been on the inmate's visiting list for a minimum of one (1) year.

DAI Policy 309.00.06 section V requires that pre-marital counseling be completed before the marriage occurs and that counseling sessions will not be provided by institution/center staff. DAI Policy 309.00.06 further states that counseling sessions will be completed in person on institution/center grounds.

On or around January 14, 2011, Zastrow submitted a request for an official decision on his request to marry Trina Lewis. As the marriage coordinator at GBCI, Mosher reviewed Zastrow's request and found that Zastrow's request did not meet the requirements of DAI Policy 309.00.06. Mosher responded to Zastrow's request on January 18, 2011, informing him that his request for marriage to Trina Lewis was denied. Mosher noted that a review of his visiting list indicated that Ms. Lewis was not on his approved visitors list and that GBCI staff was not authorized for the required counseling pursuant to DAI Policy 309.00.06. Mosher advised Zastrow that he would also be obliged to bear all financial obligations associated with the pre-marital counseling and marriage.

Mosher also noted that there were security and practicality concerns and issues with Zastrow's proposal to have the wedding performed via video conference, as GBCI had no

4

video marriage arrangements outlined by any policy or procedures. Mosher further informed Zastrow that he did not approve the marriage due to Zastrow's background and the incarcerated status of Ms. Lewis.

Mosher noted that Ms. Lewis had not been on Zastrow's visiting list for more than one year and that Zastrow had never made a request to have her placed on his visitor list. Moreover, Zastrow's background was determined by Mosher to include revocation for sexual misconduct, violence and failure to complete programming. Mosher also found that Ms. Lewis was incarcerated in Minnesota.

The DOC believes that for two persons to decide to marry there are many issues and concerns that need to be addressed to ensure a lasting, healthy marriage. In the situation of an incarcerated person, these issues are relevant because the couple is separated and there may be difficulties related to financial and sexual matters. With regard to incarcerated persons, the DOC also believes marriage counseling may assist in the success of the prisoner's rehabilitation and re-integration into society.

The Department of Corrections is not financially responsible for an inmate's decision to marry. This is a choice made by the inmate, and he and his spouse are to shoulder costs related to their desire to marry. Ms. Lewis's incarceration in Minnesota makes her unable to attend the required counseling sessions. Additionally, if a background check indicates the proposed spouse has any number of problematic conditions, such as incarceration, this would prohibit meaningful pre-marital counseling as arrangements would not be practical from a security perspective.

The requirement that the proposed spouse be on the inmate's approved visiting list for a minimum of one year attempts to ensure a safe and productive visiting experience for

5

all inmates. The one year minimum also allows the couple to get to know each other and interact for a period of time prior to making the big decision.

An inmate's visitors are screened for clearance prior to being placed on the inmate's visiting list. The DOC strives to ensure public safety while the inmate is incarcerated as well as upon his return to the community. A proposed visitor must fill out a visitor questionnaire (Form DOC 21AA) and submit it to the institution to be considered for placement on an inmate's approved visitor list. If the requested visitor is denied visitation, inmates may resubmit a proposed visitor's name for re-consideration six months after the initial decision.

Zastrow sent Pollard a letter dated January 20, 2011, informing him that Mosher denied his request for marriage to Ms. Lewis. Zastrow complained that the rule requiring that the proposed spouse be on his visitors list was an unnecessary burden and the wedding could take place over video conference, telephone or by affidavit. Zastrow then requested that Pollard provide an "official decision…on granting marriage request between [Zastrow] and Trina Lewis." Pollard reviewed Zastrow's request and Mosher's decision and found that Mosher denied Zastrow's request on the grounds that Zastrow's request did not meet the requirements of DAI Policy 309.00.06. Pollard denied Zastrow's request for marriage, informing him that Mosher's response and decision were supported. Pollard made his decision based on his review of Zastrow's request, DOC Policies and Procedures, and Mosher's findings and decision.

Consistent with § DOC 310.05, Wis. Admin. Code, inmates must exhaust all administrative remedies that the DOC has promulgated by rule before they may commence a civil action or special proceeding against any officer, employee or agent of the

6

Case 2:11-cv-00371-CNC   Filed 03/26/13   Page 6 of 13   Document 38

department in that person's official or individual capacity. To exhaust his administrative remedies under the Inmate Complaint Review System, pursuant to Wisconsin Administrative Code § DOC 310.13(1), an inmate dissatisfied with a reviewing authority decision may, within 10 calendar days after the date of the decision, appeal that decision by filing a written request for review with the corrections complaint examiner on forms supplied for that purpose.

Zastrow filed inmate complaint GBCI-2011-2003 concerning denial of his request to marry Ms. Lewis. Defendants Francois, Baenen, Rose, and Cole's only involvement with the above claim consisted of their actions respecting the disposition of inmate complaint GBCI-2011-2003 filed by Zastrow, and received by the ICE on January 27, 2011. In his inmate complaint, Zastrow asserted that Mosher denied his request for approval of marriage to Ms. Lewis and Pollard supported that denial. Zastrow further contended that Mosher and Pollard did not provide "extenuating circumstances" to deny the marriage request.

As the ICE, Francois investigated Zastrow's complaint and found that Policy DOC 309.00.06 outlined marriages for inmates and that section IV B of the policy stated "reasons for disapprovals will be provided in writing" by the warden. Francois noted that Zastrow's request was made to Mosher, who responded in writing stating that he did not approve the marriage and listed reasons that supported the disapproval. Francois further noted that Zastrow wrote to the warden who responded and supported Mosher's decision in compliance with DOC 309.00.06 IV. On January 27, 2011, Francois found that there was no violation of the Wisconsin Administrative Code and recommended that complaint GBCI-201102003, filed by Zastrow, be dismissed.

On January 31, 2011, Baenen reviewed Zastrow's inmate complaint and the findings of the ICE as the reviewing authority. Based on those findings, Baenen accepted the ICE's recommendation and dismissed Zastrow's inmate complaint GBCI-2011-2003. Zastrow appealed this decision to the CCE's office, where it was received on February 7, 2011.

On March 25, 2011, as the CCE, Rose reviewed Zastrow's inmate complaint, the ICE findings and recommendation, and his appeal. She found that the institution's decision reasonably and appropriately addressed the issue raised by Zastrow and that the appeal presented no information to warrant a recommendation overturning that decision. Rose noted that DAI Policy 309.00.06 requires the proposed spouse to be on the inmate's approved visiting list for a minimum of one year, and that Zastrow's proposed spouse did not meet that requirement. Rose further noted that Zastrow had not made proper arrangements for the required marriage counseling. Also, Rose found that the denial of Zastrow's marriage request was appropriate and recommended that his appeal be dismissed. Lastly, Rose encouraged Zastrow to review DAI Policy 309.00.06 for specifics on the conditions required for his marriage request to meet approval.

Cole reviewed Zastrow's inmate complaint along with the findings of the ICE and CCE, and then dismissed the complaint on March 30, 2011.

Defendants Francois, Baenen, Rose, and Cole did not have the authority to approve or deny Zastrow's marriage request or reverse the decision of Mosher or Pollard. They could only determine whether staff violated administrative rules in deciding Zastrow's request for marriage.

8

ANALYSIS

In support of summary judgment on the merits, defendants offer that their reasons for denying Zastrow's request to marry were reasonably related to legitimate penological interests. Specifically, Ms. Lewis had not been on Zastrow's visitor list for a year to allow them to get to know each other and ensure public safety upon his release, and Zastrow and Ms. Lewis had not completed marriage counseling designed to assist Zastrow in a successful rehabilitation and re-integration into society. In addition, defendants submit that Francois, Baenen, Rose, and Cole lacked personal involvement in the decision not to approve Zastrow's marriage request and cannot be liable under 42 U.S.C. § 1983. Furthermore, defendants contend that they are entitled to qualified immunity because it was not clearly established that their conduct would violate Zastrow's rights.

In response, Zastrow maintains that defendants' reasons for denying his marriage request are invalid, as he has known Ms. Lewis for many years, and because marriage counseling is not ordinarily a necessary prerequisite to marriage. He also asserts that defendants rejected, without adequate justification, his suggestion that he be permitted to complete the required marriage counseling by videoconference. Defendants did not file a reply brief.

I. Personal Involvement

Francois, Rose, Baenen, and Cole have been involved in the decision to deny Zastrow's proposed marriage to Ms. Lewis as they found that the decision complied with applicable DOC regulations at that time. However, such involvement is not a sufficient basis for liability under § 1983. *George v. Smith,* 507 F.3d 605, 609-10 (7th Cir.2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to

9

the [constitutional] violation."); *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir.2006). Hence, these defendants will be dismissed.

## II. Qualified Immunity

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's actions violated a clearly established right. *See Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir.2010). To be clearly established, a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* ___ U.S. ___, 132 S.Ct. 2088, 2093 (2012) (internal quotation omitted). A plaintiff is not required to identify a case that is factually identical to his own suit, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* ___ U.S. ___, 131 S.Ct. 2074, 2083 (2011). Courts may determine that a defendant's action did not violate a clearly established right without deciding the question of whether a constitutional right was violated at all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009). In 1990, the Seventh Circuit held in an unpublished opinion:

> The *Turner* decision does not explicitly invalidate counseling requirements, and its application to this case is not so straightforward that it can be said to clearly establish the invalidity of such requirements. We do not imply with this holding that Turner will not operate to preclude counseling requirements such as this one, but only that its application to that context is not so obvious that it can be said to constitute clearly established constitutional law.

10

*Williams v. Shettle*, 1990 WL 136783 *2 (7th Cir. 1990) (unpublished opinion). Despite the intervening years, case law still does not provide an unambiguous answer as to whether requiring marriage counseling as a precondition to a prisoner's marriage violates the Constitution. Zastrow has identified no case that would alert the defendants that a policy requiring counseling is unconstitutional. Hence, defendants Mosher and Pollard are immune from money damages. This leaves Zastrow's claim for declaratory relief.

### III. Merits/Turner Analysis

Like other people, prisoners enjoy a constitutionally protected right to marry, subject to substantial restrictions when one or more of the prospective spouses is incarcerated. *Turner v. Safley*, 482 U.S. 78, 95 (1987). However, the regulation of a prisoner's right to marry must be "reasonably related to legitimate penological interests" to be valid. *Id.* at 89. Restrictions that burden the right to marry will be overturned if "they are an exaggerated response" or if "the rule sweeps much more broadly than can be explained by . . . the proffered justification." *Id.* at 98. "*Turner* does not say that every delay violates the Constitution," so some delay may be permissible, particularly "when the prisoner's misbehavior has led to" the issues causing the marriage to be delayed. *Martin v. Snyder*, 329 F.3d 919, 922 (7th Cir. 2003).

On this record, it is impossible to determine whether the outright denial of Zastrow's marriage request was an exaggerated response by prison officials or a decision reasonably justified by legitimate peonological concerns. The requirement that a prospective spouse be listed on a visiting list for a year prior to approval of a marriage request may be reasonable in many circumstances.

11

Defendants submit that hasty prison marriages, where the partners have had no opportunity to get to know one another prior to the marriage, may pose public safety concerns upon the inmate's release. However, in situations where the inmate is able to demonstrate a longstanding relationship with the proposed spouse, this requirement may lack sufficient support.

Similarly, defendants suggest that premarital counseling may benefit the inmate's rehabilitation. But aside from a vague mention of unspecified logistical or cost concerns, defendants do not explain why Zastrow's request to participate in the required counseling by videoconference is unacceptable. Although in-person counseling may be preferable, the requirement of in-person marriage counseling bars Zastrow from progressing towards marriage approval until Ms. Lewis is released from prison. Moreover, the record before this court does not demonstrate why Zastrow's requested videoconference accommodation could not be accomplished. *Toms v. Taft*, 338 F.3d 519, 527 (6th Cir. 2003) ("[T]he distinction between actively prohibiting an inmate's exercise of his right to marry and failing to assist is untenable in a case in which the inmate's right will be completely frustrated without officials' involvement."). On this minimal record, it cannot be held that the regulations applied to prohibit Zastrow's marriage request satisfy *Turner*. Therefore,

IT IS ORDERED that defendants' motion for summary judgment (Doc. 24) will be GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that defendants Pollard, Baenen, Francois, Rose, and Cole are DISMISSED.

IT IS FURTHER ORDERED that qualified immunity protects the defendants from paying monetary damages for their past actions.

IT IS FURTHER ORDERED that plaintiff's motion for trial (Doc. 24) will be GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that a telephonic scheduling conference is set for 9:00 AM on May 29, 2013. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. District Judge